**Carl Owen ABBOTT, Appellant,**

v.

**Brenda Marie ABBOTT, Appellee.**

Court of Appeals of Kentucky.

Dec. 30, 1983.

Discretionary Review Denied
Sept. 7, 1984.

Thomas W. Amann, Covington, for appellant.

L.M. Myra Greenburg, Philip Taliaferro, Covington, for appellee.

Before PAXTON, REYNOLDS and WIL-HOIT, JJ.

WILHOIT, Judge.

The primary question presented herein is whether a circuit court acting under the Kentucky Dissolution Act, KRS ch. 403, loses jurisdiction to modify support provisions for a severely handicapped, wholly dependent child from his noncustodial parent when such a child reaches the age of eighteen. We hold that it does not.

These two appeals by Carl Owen Abbott have been consolidated for purposes of decision. The appeal in No. 82–CA–2318–MR is taken from a final order of the Kenton Circuit Court which dealt with child support arrearages and a continuing support obligation; the appeal in No. 82–CA–2556–MR is taken from the circuit court's subsequent order denying Mr. Abbott's two motions for post-judgment relief under CR 60.02. The appellee in both these appeals is Brenda Marie Abbott, the appellant's former wife.

By a decree of dissolution dated January 26, 1973, the Kenton Circuit Court dis-

solved the parties' marriage and incorporated by reference an agreement between the parties, dated January 12, 1973, which treated child custody and support, the disposition of property, and maintenance. That agreement granted custody of the parties' three minor children to the appellee and provided

> [t]hat the husband shall pay the sum of $20.00 per week per child for support, maintenance and education, and in addition he shall maintain hospitalization and medical pay insurance for their extraordinary medical services as they may require[.]

In December 1981, the appellee filed a motion seeking a judgment for arrearage in child support, and in January 1982, she further moved for a modification of the settlement agreement to eliminate a $4,000 lien on the marital residence in favor of the appellant and to void the agreement's requirement for sale of the residence. On January 18, 1982, a hearing was held at which testimony was taken and evidence presented; on this date the appellee filed a motion in open court to increase child support to $150 per week for the parties' remaining dependent child. A narrative statement of this hearing was approved by the circuit court under CR 75.13 and appears in the transcript of the record. Subsequent to this hearing, on June 16, 1982, the court entered a judgment by which it determined that the appellant owed a child support arrearage of $7,269.03, deducted from this arrearage the appellant's $4,000.00 lien, ordered that this lien be released and that execution could issue on the remaining $3,269.03 of arrearage, and imposed on the appellant "a continuing duty of support" for the remaining dependent child at $75 per week "subject to further orders of the Court." A motion for CR 60.02 relief from this judgment was filed on July 14, 1982, and a notice of appeal on July 16, 1982. On July 27, 1982, the appellant filed a second CR 60.02 motion. By order of November 11, 1982, the court denied relief pursuant to CR 60.02, and on December 7, 1982, the appellant filed a notice of appeal of this order.

■ The appellant argues that the circuit court did not have jurisdiction to modify the amount of support payments for the parties' older son after that child reached eighteen years of age; the court found this child to be "severely mentally retarded and . . . wholly dependent upon his parents for his care, comfort and nurture because of permanent physical and mental disabilities and impairment[.]" It is clear from *Wilhoit v. Wilhoit*, Ky., 521 S.W.2d 512 (1975), and *Showalter v. Showalter*, Ky., 497 S.W.2d 420 (1973), cited by the appellant, that ordinarily a circuit court in a dissolution proceeding does not have jurisdiction to order support payments after a child reaches the age of eighteen in the absence of a contractual agreement by the parents to the contrary. Here, however, we are concerned with a handicapped child, which does not appear to have been the case in either *Wilhoit* or *Showalter*.

■ KRS 403.250(3) provides in relevant part:

> Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child.

This is a verbatim adoption of Section 316(c) of the Uniform Marriage and Divorce Act. The commissioners' note to this section states that in the absence of a written agreement by the parties in a dissolution proceeding or express provision in the decree of dissolution, the section "terminates the obligation of a parent to support a child, *only upon the child's emancipation.*" 9A U.L.A. 185 (1979) (emphasis added). As to a child who is not handicapped, KRS 405.020(1) mandates that emancipation, assuming that it has not already otherwise occurred, *see Carricato v. Carricato*, Ky., 384 S.W.2d 85 (1964), occurs when such a child becomes eighteen years of age. However, for a severely handicapped child, KRS 405.020(2) is controlling and provides:

The father and mother shall have the joint custody, care and support of their children who have reached the age of eighteen and who are wholly dependent because of permanent physical or mental disability. If either of the parents dies, the survivor, if suited to the trust, shall have the custody, care and support of such children. The father shall be primarily liable for the custody, care and support of wholly dependent children who have reached the age of eighteen.

Under this statute, a wholly dependent child is not emancipated by operation of law at the time at which he becomes eighteen years of age. The circuit court found that the older son of the parties was "wholly dependent," and based upon the record, this finding was not clearly erroneous. CR 52.01. Thus, under KRS 403.250(3), taken together with the applicable commentary and KRS 405.020(2), the circuit court retained and continues to retain jurisdiction over the support provisions of its decree of dissolution as they affect the parties' older son.

We do not believe that KRS 2.015, which defines the age of majority in this Commonwealth, has any bearing on this appeal and decline to interpret the exception that it contains for handicapped children at this time. In *Young v. Young*, Ky., 413 S.W.2d 887 (1967), the Court necessarily utilized this statute in interpreting the former version of KRS 405.020(1) in dealing with non-handicapped children; *Young* was relied on in *Showalter, supra*, which in turn was cited as authority in *Wilhoit, supra*. The General Assembly by amending KRS 405.020 to its present form in 1968, *see* 1968 Ky. Acts ch. 100, has eliminated the need for any reference to KRS 2.015 on this subject.

■ Although the appellant argues that he and the appellee orally agreed to a cessation of child support payments for the parties' younger son for those months during which that son resided with the appellant in Pennsylvania, there was no finding of such an agreement by the circuit court, nor does the record include a written request for such a finding. CR 52.04; *see Cherry v. Cherry*, Ky., 634 S.W.2d 423 (1982). The narrative statement approved by the circuit court has no recitation of any testimony concerning any oral agreement on this matter; indeed it recites that Mrs. Abbott testified that she continued to maintain a home for the younger son at all times while he was staying in Pennsylvania with his father, thereby incurring expenses for his maintenance and support. We have no basis for disturbing the circuit court's judgment on this point.

We are asked to determine that the circuit court erred in failing to give full faith and credit to certain orders of a court of the Commonwealth of Pennsylvania which purported to modify the support provisions established by the Kenton Circuit Court. According to the approved narrative statement, the circuit court found "that foreign state court orders secured in Pennsylvania without notice to the custodial parent, allegedly operating to modify child support obligations originally rendered in Kentucky, do not have a binding effect on the original rendering court, the Kenton Circuit Court, because the Pennsylvania Court did not have jurisdiction of the custodial parent nor the child in question." The statement recites that Mrs. Abbott testified that she "never received notice that Carl Abbott was petitioning the Pennsylvania courts to reduce his child support obligation so as to allow her an opportunity to contest Carl Abbott's motions pending in Pennsylvania." In its order of June 15, 1982, the court found that its original support order "ha[d] not been modified or reduced by foreign state court orders."

■ The manner in which the question of the effect of the Pennsylvania orders was raised before the circuit court may well have been procedurally irregular, but we believe that it is clear from the narrative statement that the matter was before the court by the express or implied consent of the parties, *see* CR 15.02, so that any failure to comply with CR 7.02 was waived. We have our doubts as to whether Mrs. Abbott had any duty to move that the

Pennsylvania orders not be given full faith and credit; the burden was more properly on Mr. Abbott to plead and prove the existence of foreign judgments allegedly affecting a domestic support order because he was seeking to use those judgments as a bar to the enforcement of a domestic order. CR 8.03.

■ Mrs. Abbott sought the assistance of the Pennsylvania court to enforce her Kentucky support order through the provisions of the Uniform Reciprocal Enforcement of Support Act [U.R.E.S.A.], 9A U.L.A. 643 (1979), of which Act both Kentucky and Pennsylvania are adopting jurisdictions. *See* KRS ch. 407, 42 Pa.Cons. Stat. §§ 6741–6780 (formerly 62 Pa.Cons. Stat. §§ 2043–1 to 2043–43). She was asking for enforcement of support only as to the older, handicapped son and did not seek enforcement of support for the younger son who at that time was living with his father, yet the Pennsylvania court purported to modify the Kentucky support order to eliminate support for the younger son for periods when he was living in Pennsylvania with his father. The circuit court properly refused to recognize the action of the Pennsylvania court, which in these circumstances had no authority to change or alter the Kentucky judgment. *Hamilton v. Hamilton*, Ky., 476 S.W.2d 197 (1972). It is clear from Mrs. Abbott's petition to the Pennsylvania court and the accompanying documents that she was seeking enforcement of the Kentucky support order as to the older son; she did not subject herself to the jurisdiction of the Pennsylvania court for an independent action by her former husband relating to his support obligation for his younger son. KRS 407.360; 42 Pa. Cons.Stat. § 6772 (formerly 62 Pa.Stat. § 2043–34); U.R.E.S.A. § 32. Moreover, the circuit court's finding that Mrs. Abbott had no notice of Mr. Abbott's attempt to obtain support modification, which finding is not clearly erroneous based upon the approved narrative statement, was sufficient to justify denial of recognition of the foreign orders. A judgment obtained without notice is void under the Fourteenth Amendment and is not entitled to full faith and credit in another state of the Union. *See* 47 Am.Jur.2d *Judgments* § 1222 (1969); Restatement (Second) of Conflict of Laws § 25, comment b (1969).

■ Because we have determined that the circuit court did not err in finding that its original support order was not subsequently modified by oral agreement of the parties or by judicial action outside Kentucky, we find no error in the arrearages that it determined for calendar years 1976 through and including 1981. These figures accurately reflect the amounts by which the appellant was deficient in support payments, viz., the total support due in each year (without reduction for periods during which the younger son resided with his father) less the total payments made by the appellant as shown by the records of the Kenton County domestic relations court, which are included in the record as exhibits. The total arrearage for 1973, 1974, and 1975, as found by the circuit court, was $2,711.75; the appellant contends that this should be $2,596.25, so that an error of $315.50 was made. $200.00 of this difference is easily disposed of; the support due in 1974 and 1975 was $3,120.00 (52 × $60.00), not $3,020.00 as used by the appellant. This leaves only a $115.50 difference between the circuit court's total for these three years and that of the appellant. During this time, support payments were made directly to the appellee rather than through the domestic relations court. Mrs. Abbott testified that "she believed to her best knowledge that Carl Abbott failed to pay $3,000.00 in child support" during these three years. The appellant's checks to Mrs. Abbott bear no designation of their purpose. Given the state of the record and the very small difference between the circuit court's figures for this period and those which the appellant proffers, and the fact that the appellant did not contribute to the support of his older handicapped son after that child's eighteenth birthday until ordered to do so by the court over two years afterward, we are unable to find reversible error on this matter. CR 61.01.

*See Phillips v. Green*, 288 Ky. 202, 155 S.W.2d 841 (1941).

The evidence in the record is more than sufficient to sustain the circuit court's order of $75.00 per week in child support for the older son. The guidelines of the Kenton Circuit Court are precisely what they have been denominated; they are not fixed standards to be mechanically applied. We certainly believe that the situation here warranted the circuit judge's action and find no abuse of his discretion. *Wilhoit v. Wilhoit, supra.*

The orders appealed from are affirmed.

All concur.