**Richard LEATHERS, Appellant,**

v.

**Brenda Jo Leathers RATLIFF, Appellee.**

**No. 94–CA–002400–MR.**

Court of Appeals of Kentucky.

June 28, 1996.

Lawrence R. Webster, Pikeville, for Appellant.

Michael de Bourbon, Bobby Rickey King, Pikeville, for Appellee.

Before LESTER, C.J., and DYCHE and EMBERTON, JJ.

EMBERTON, Judge.

Richard Leathers brings this appeal from the judgment of the Pike Circuit Court entered May 17, 1994. He challenges the order which provided:

> That the Petitioner, Richard Edward Leathers, continue to make the child support payments ordered by this Court in that his son is not now married, his son is a high school student, and that said obligation to pay support shall continue while the parties' son is a high school student but not beyond that school year in which

---

the parties' son reaches the age of nineteen (19) years.

For the reasons that follow, it is our opinion the order was proper. We affirm.

Richard and Brenda Leathers were married on March 4, 1975. One child, Joseph Edward, was born of the marriage on April 29, 1976. In December of 1977, Richard filed a Petition for Dissolution of Marriage. A supplement decree entered May 3, 1978, awarded permanent custody of two-year-old Joseph to his mother. The decree provided: "Petitioner [Mr. Leathers] is ordered to pay the Respondent [Mrs. Leathers] for the maintenance and care of said child the sum of $225.00 per month, until further orders of this Court."

In his preschool years, Joseph was diagnosed as suffering from attention deficit disorder. The record reveals that through the years he has had great difficulty with his emotional and educational development. In consultation with his physicians and the school authorities, Mrs. Leathers made the decision to have her son repeat second grade in the school year of 1984–85. Consequently, Joseph was still attending high school when he became eighteen years old. Based upon these facts, Mrs. Leathers made application to the court that child support continue pursuant to Ky. Rev. Stat. (KRS) 403.213(3).

KRS 403.213(3)[1] became effective on July 14, 1992, and provides in pertinent part:

Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child shall be terminated by emancipation of the child unless the child is a high school student when he reaches the age of eighteen (18). In cases where the child becomes emancipated because of age, but not due to marriage, while still a high school student, the court-ordered support shall continue while the child is a high school student, but not beyond completion of the school year during which the child reaches the age of nineteen (19) years.

Although it has not gone unnoticed by this court that Mr. Leathers exhibits an uncommon lack of caring and sensitivity to his son's learning disability, as well as a total lack of understanding of the additional responsibility carried by the custodial parent, he raises a valid question of law.

The appellant's central argument is that to extend his child support obligation by the application of KRS 403.213(3) runs afoul of KRS 446.080(3) which provides: "No statute shall be construed to be retroactive, unless expressly so declared." Mr. Leathers claims that because the decree was entered in 1978, the duration of his support obligation is controlled by the statute in effect at that time; namely KRS 403.250(3)[2] which provided in pertinent part:

Unless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child but not by the death of a parent obligated to support the child.

In 1978, the date the original child support order was entered, KRS 2.015 was in effect. The statute defines the legal "age of majority" in Kentucky as eighteen;[3] thus, Mr. Leathers maintains the court lacked authority to order him to pay support beyond his son's eighteenth birthday.

We have reviewed a line of cases stemming from the legislature's reduction of the age of majority from twenty-one to eighteen in 1964. At first reading, several of these cases seem to support Mr. Leathers' position that the statute in effect on the date the decree was entered controls. See Showalter v. Showalter, Ky., 497 S.W.2d 420 (1973); Worrell v. Worrell, Ky., 489 S.W.2d 817

---

1. See note 2 infra. p. 198.

2. In 1987, KRS 403.250 was amended to allow for payment of child support for a child more than eighteen years of age if that child was still in high school. Subsequently, KRS 403.250 was revised and the provisions regarding child support were codified in KRS 403.213 which is set forth in relevant part supra, at p. 198.

3. Following the enactment of KRS 2.015, "emancipation" as used in KRS 403.250(3), was construed to mean when the child turned eighteen years of age. Wilhoit v. Wilhoit, Ky., 521 S.W.2d 512 (1975); Abbott v. Abbott, Ky.App., 673 S.W.2d 723 (1983).

(1973); *Collins v. Collins,* Ky., 418 S.W.2d 739 (1967); and *Wilcox v. Wilcox,* Ky., 406 S.W.2d 152 (1966). However, upon closer scrutiny, and when read in conjunction with other cases grappling with the issue, it is evident the holdings turned on an interpretation and enforcement of the parties' contractual intent at the time their agreements regarding support were entered. The agreements in *Showalter, Worrell, Collins* and *Wilcox* utilized language to the effect that the support would continue until the child reached the "age of majority" or for so long as the child was an "infant."

In those cases, the court recognized that at the time the parties entered into their respective agreements the age of majority was statutorily defined as twenty-one not eighteen. In construing the contract, and the manner in which it was to operate, the court acknowledged that the parties' intent at the time of the agreement governed. To determine that intent it was necessary to consider the circumstances at the time the contract was executed. *See Parrish v. Newbury,* Ky., 279 S.W.2d 229 (1955) and *Jones v. Linkes,* Ky., 267 S.W.2d 936 (1954). Accordingly, because the age of majority at that time was statutorily defined and established as being twenty-one, the court found it to be the age the parties' intended with respect to the duration of the support obligation. Thus, despite the subsequent enactment of KRS 2.015 which, when read together with KRS 403.250, limited the court's authority to require payment of child support beyond age eighteen, the court could nevertheless enforce a party's contractual agreement to pay support beyond that point.

On the other hand, *Young v. Young,* Ky., 413 S.W.2d 887 (1967) and *Blackard v. Blackard,* Ky., 426 S.W.2d 471 (1968), demonstrate that in the absence of a contract, the term of the legal obligation to support a child is controlled by, and may be modified by, a court of competent jurisdiction in accordance with existing statutory authority created after entry of the decree.

In *Young,* the divorce judgment was entered on March 9, 1956, a time when the age of majority was twenty-one. The judgment itself was silent regarding child support for the parties' two minor children, Ester and Sharon. When Ester was twenty and Sharon was seventeen, a motion for a rule was instituted; the rule was returnable July 20, 1965. The Chancellor ordered Mr. Young to pay the sum of $25 per week for his two daughters until changed by order of the court. Reversing on appeal, the *Young* court reasoned:

This action was brought after KRS 2.015 became effective and it provides: 'Persons of the age of eighteen years are of the age of majority for all purposes in this Commonwealth except for the purchase of alcoholic beverages and for purposes of care and treatment of handicapped children, for which twenty-one years is the age of majority.'

The enactment of KRS 2.015 was within the realm of legislative powers and this court is without the power to amend, alter or change that which has been done by the legislature in the exercise of their duty. In the absence of a contract the legal obligation of a father to support his children terminate upon their reaching their eighteenth birthday. There may exist a moral obligation for a father to assist his children in acquiring a college education but this is not legally enforceable.

The circuit court had no authority to require the appellant to make payments for the support of either of the children after they reached eighteen years.

*Young,* at 888.

*Blackard* involved a divorce judgment entered in 1959 which incorporated the terms of a separation agreement relative to child support payments. When the child reached the age of eighteen, on March 15, 1967, on motion of the father, the court ordered termination of support. On appeal the question was whether the age limit at the time the separation agreement was made, and the divorce judgment was entered, controlled duration of the support obligation or whether the legislative change (the 1964 enactment of KRS 2.015 reducing the age of majority from twenty-one to eighteen) operated to shorten the period of obligation. Affirming the order, the *Blackard* court held:

In *Wilcox* and in *Collins* this court held that the father's obligation continued to age 21 because the separation agreements of the parties, incorporated into the divorce judgments, specifically provided for payment of support until the child 'reached the age of majority.' The court treated it as a matter of contractual intent. In *Young,* on the other hand, where there was no contract, this court held that the obligation ended when the child reached 18.

In the instant case the separation agreement, as it related to support payments, provided simply that the payments would be made 'until further orders of the Court.' From this we can find no evidence of *intent* that the payments would continue to the then fixed age of majority.

Since we do not find any contractual intent that payments continue to age 21, the situation here is comparable to that in *Young,* where there was no contract, and the holding in *Young* is controlling.

*Id.* at 472–473.

■ In the case at bar there was no separate contractual agreement between the parties. Instead, there was simply a court order fixing the amount of support payable "until further orders of this court." There is no evidence whatsoever regarding the parties' intent relative to the duration of the support obligation. In our opinion, under the facts and circumstances presented in this case, *Young* and *Blackard* are controlling. Accordingly, the court's authority to enter orders affecting the child support obligation is governed by KRS 403.213(3). Application of KRS 403.213 does not, in our opinion, violate KRS 446.080(3). The provisions of the decree respecting child support are subject to the continuing jurisdiction of the court. *See* KRS 403.180. When read in its entirety, the statute's inherent application to decrees which predated it is clear. It was beyond dispute that, although he turned eighteen on April 29, 1994, Joseph was still in high school. Thus, he fell within the purview of the statute. Mr. Leathers' court-ordered support was properly continued.

Mr. Leathers frames his second argument on appeal as follows:

IF A STATUTORY OR CONTRACTUAL DUTY TO PAY FOR A PERIOD OF TIME IS MEASURED BY OCCURRENCES OR EVENTS SOLELY WITHIN THE CONTROL OF THE BENEFICIARY OF THAT DUTY, THEN THAT DUTY STOPS WHEN THE PERIOD SHOULD HAVE REASONABLY STOPPED.

Acknowledging the nonexistence of case law or statutory support for his position in this regard, Mr. Leathers attempts to draw an analogy to principles of contract law. He peppers his argument with bold assertions totally lacking in evidentiary support and fraught with legal inaccuracies. Notwithstanding his son's documented learning disability, Mr. Leathers claims he should have graduated high school in December 1994. Thus, he argues, his support obligation should have terminated at that point. It is his contention that Ms. Leathers, as custodial parent, had unfettered control over Joseph's educational progress and thereby exercised exclusive control over the occurrence of events that would measure his support obligation. This, he asserts, is contrary to principles of contract law and should operate to suspend his support obligation. We disagree. In our opinion, his reliance on contract law is wholly misplaced. The duty to pay support in this instance is not controlled by the terms and conditions of a contract. The support obligation was fixed by order of the court; it is statutorily authorized and mandated.

Mr. Leathers also claims it is not his fault that his son "cannot pass classes in one of the least demanding school systems in western civilization." We doubt the truth of such a sweeping indictment of the school system, or of his son, and we find only slightly more credible his disclaimer of fault. Even so, if it were established fact he would not be relieved of his duty to pay child support.

■ The final two arguments posed by Mr. Leathers are: (1) that he should not be required to pay support during the summer months between Joseph's junior and senior years because Joseph was under no legal obligation to finish high school; and (2) that the support payments due after Joseph has reached the age of eighteen should not be

payable to a parent. By the enactment of KRS 403.213 the legislature mandates the continuation of the court-ordered support under the undisputed facts presented. The statute contains no provision excepting from the payment obligation those periods of time when a high school student is on break or summer vacation. Furthermore, the legislative intent is clear and unambiguous that the custodial parent continue to be the recipient of the support payments. Accordingly, Mr. Leathers' arguments in this vein are meritless. We decline to address them further.

The order of the Pike Circuit Court is affirmed.

All concur.