# MONTICELLO *v.* MONTICELLO

[No. 244, September Term, 1973.]

*Decided February 26, 1974.*

The cause was argued before MURPHY, C. J., and BARNES, SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Robert R. Bright* for appellant.

*William D. Hooper, Jr.,* for appellee.

SINGLEY, J., delivered the opinion of the Court.

By order entered 5 December 1973, we directed that the writ of certiorari issue to the Court of Special Appeals in this case, to the end that the case should be docketed in this Court.

Chapter 651 of the Laws of 1973 (the Act) made sweeping changes in respect of the age of majority in Maryland. Section 1 of the Act, now codified as Maryland Code (1957, 1968 Repl. Vol., 1973 Cum. Supp.) Art. 1, § 24 provides:

> "(a) Except as otherwise specifically provided by statute, a person eighteen years of age or more is an adult for all purposes whatsoever and has the same legal capacity, rights, powers, privileges, duties, liabilities, and responsibilities as prior to July 1, 1973, persons had at twenty-one years of age, and

the 'age of majority' is hereby declared to be eighteen years.

"(b)(1) The terms 'adult,' 'of full age,' or 'of legal age' refer to persons who have attained the age of eighteen years.

"(2) The term 'minor,' as it pertains to legal age and capacity, refers to persons who have not attained the age of eighteen years."

Section 52 of the Act provides that the Act shall take effect 1 July 1973. Section 51 stipulates:

"That the provisions of this Act shall be construed only prospectively and shall not be applied or interpreted to have any effect upon or application to any event or happening occurring prior to the effective date of this Act, or to any gift made under the Uniform Gift to Minors' Act prior to that date, or to any court decree, trust, will, deed or other instrument in effect prior to the effective date of this Act."

The question posed by this case is what effect the Act has on that part of a divorce decree regulating custody and child support which had been entered on 14 October 1968 by the Circuit Court for Harford County.

The underlying facts can be briefly recounted. The appellant, Corinne M. Monticello, and the appellee, Lawrence F. Monticello, were married on 20 August 1949. Three children, Vicky, Patricia (Patty), and Michael Monticello, were born of the marriage. In August, 1966, Mr. and Mrs. Monticello agreed to separate and in October of that year entered into an agreement covering property rights, custody, visitation rights, and child support.

Less than two years later, Mr. Monticello sued Mrs. Monticello for divorce. The decree entered in October, 1968 which granted him a divorce a vinculo matrimonii contained a paragraph which was at variance with the corresponding

provision of the separation agreement.[1] The decree provided, in part:

> "IT IS FURTHER ADJUDGED, ORDERED AND DECREED, that the Guardianship and Custody of Vicky Monticello, Patty Monticello and Michael Monticello, infant children of the parties hereto, be and it is hereby awarded unto the Defendant, Corinne M. Monticello . . . .
>
> "IT IS FURTHER ADJUDGED, ORDERED AND DECREED that the Plaintiff, Lawrence F. Monticello, pay unto the Defendant, Corinne M. Monticello, for the support of the three (3) infant children, a sum payable weekly in total amount of five thousand ($5,000.00) dollars yearly, with credit to be applied to it for the mortgage payments he now makes, together with the Defendant's increase in equity in the residence as a result of these mortgage payments made by the Plaintiff. In the event the Defendant moves from the residence, the Plaintiff will receive credit only for such increases of the Defendant's equity as may result from his continued payments on the mortgage indebtedness; subject to further Orders of this Court . . . .
>
> * * * "

In April, 1973, when Vicky, the oldest of the Monticello children, attained age 21, Mr. Monticello petitioned the court for a one-third reduction in the annual support allowance of $5,000.00. Mrs. Monticello answered, resisting the relief prayed. Monticello countered with a supplemental petition, filed on 26 June 1973, which repeated the reference to Vicky, and brought to the attention of the court the fact that his second child, Patricia, had attained age 18 on 22 February 1973, and would attain her majority on 1 July 1973, when the Act would become effective. He concluded by suggesting

---

1. The provisions of the separation agreement were less generous than the decree with respect to child support.

that support payments for Michael, the youngest of the children, be fixed at $800.00 per year.

From a decree which terminated support payments for Vicky at age 21; terminated support payments for Patricia on the effective date of the Act, and fixed support payments for Michael at $55.00 per week, Mrs. Monticello has appealed.

While the question here presented, or a variation of it, has been considered by our lower courts, the matter is one of first impression here, and we granted certiorari in order that uniformity of decision could be achieved.

At the outset, it should be emphasized that we are not dealing with a child support decree directing that payments be made *until* age 21, *see Muth v. Culler*, Daily Record vol. 171, Nov. 17, 1973, at 6 (Cir. Ct., Montgomery Co. Nov. 8, 1973); *Sproston v. Sproston*, 8 Wash. App. 218, 505 P. 2d 479 (1973), but with a decree directing that payments be made for *infant* children, which may be equated with phrases like "minor" children, or "during infancy," or "during minority," or "until attaining majority," or "until age of majority."

In *Massey v. Massey*, Daily Record vol. 171, Nov. 2, 1973, at 3 (Cir. Ct. No. 2, Baltimore City Oct. 30, 1973), where there was a separation agreement, approved in the divorce decree,[2] directing that support payments continue until the children should "attain the age of majority," the court concluded that the support obligation continued until age 21, relying on both the intentions of the parties, and the fact that section 51 mandated prospective application of the Act. *Newton v. Newton*, Daily Record vol. 172, Jan. 5, 1974, at 5 (Cir. Ct., Anne Arundel Co. Dec. 12, 1973), reached a similar result where a decree, which adopted the language contained in a voluntary separation agreement entered into by the parties, directed the payment of support for a minor child and provided that payments continue until he "is emancipated or becomes self-supporting." [3]

---

**2.** The divorce decree approved the agreement, and, "in accordance therewith," ordered support payments for the "minor children."

**3.** While emancipation may result from other circumstances, *see* 59 Am. Jur. 2d *Parent and Child* § 93 (1971), the *Newton* court dealt with a son who had attained age 18.

If we were only concerned with the construction and interpretation of a separation agreement we would surely adopt the objective law of contracts, enunciated by this Court, speaking through Chief Judge Brune, in *Slice v. Carozza Properties, Inc.*, 215 Md. 357, 368, 137 A. 2d 687, 693 (1958):

> "As we turn to the authorities, we may note first that the theory of 'objective law' of contracts has been almost universally adopted by this time. The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding, or unless there is fraud, duress or mutual mistake. *Ray v. Eurice*, 201 Md. 115, 93 A. 2d 272 [(1952)]."

*See also U.S.I.F. Triangle Towers Corp. v. Rockwood Dev. Co.*, 261 Md. 379, 384, 275 A. 2d 487, 489-90 (1971).

We fail to see why a somewhat analogous approach should not be taken in the interpretation of a judicial decree, whether or not it supplants a prior agreement of the parties — that it is not so much a question of what the parties or what the court intended the decree to mean, but what a reasonable person in the position of the parties, or of the court,[4] would have thought it meant. *See Katz v. Pratt St. Realty Co.*, 257 Md. 103, 120, 262 A. 2d 540, 548 (1970); *Chesapeake Isle, Inc. v. Rolling Hills Dev. Co.*, 248 Md. 449, 453, 237 A. 2d 1, 3 (1968); *Ray v. Eurice, supra*, 201 Md. at 127, 93 A. 2d at 279.

As a consequence, we are prepared to hold that the use of phrases such as "infant" child, "minor" child, "during infancy," "during minority," "until attaining majority," or "until age of majority," in an agreement or in a decree relating to child support dated prior to 1 July 1973, must

---

**4.** *See* Rosher v. Superior Court, 9 Cal. 2d 556, 560, 71 P. 2d 918, 920 (1937).

have meant support until attaining age 21, in the absence of a clear expression of contrary intent, since this is the only meaning which could reasonably have been within the contemplation of the parties at the time such an agreement was executed, or in a judge's mind when such a decree was entered. However, we do not decide whether this holding governs the interpretation of an agreement or decree which refers to "child" or "children," otherwise unidentified, or to a child by name, without further elaboration from which intent can be inferred.

Such a holding is not only consonant with the provisions of section 51, which direct that the Act be applied prospectively, but is consistent with the clear expression of legislative intent found in the Legislative Council's report to the 1973 General Assembly regarding the bill which later became the Act:

> "Item 14(1) is a comprehensive bill lowering the age of majority from twenty-one to eighteen years of age in all areas of the common law, in all sections and articles of the Annotated Code of Maryland, and in all counties of the State of Maryland. *There are two exceptions, however. First, the bill is prospective in effect; it clearly states that all decrees, trusts, deeds and other instruments in being on the effective date of July 1, 1973 will not be affected by this change.* The second exception concerns the law on alcoholic beverages, which is separately reported as Item 14(2)." Report to the General Assembly of 1973, at 3 (1973) (emphasis supplied).

*See also* Wilner, *Family and Juvenile Law*, Md. B.J., January 1974, at 38, 39.

Results similar to that reached here may be found in *Baker v. Baker*, 80 Wash. 2d 736, 498 P. 2d 315 (1972); [5] in *Waldron v. Waldron*, 301 N.E.2d 167 (Ill. App. 1973); in

---

**5.** *Compare Baker with* Sproston v. Sproston, 8 Wash. App. 218, 505 P. 2d 479 (1973) (divorce decree provided for support payments until child reached 21).

*Vicino v. Vicino,* 30 Conn. Supp. 49, 298 A. 2d 241 (Super. Ct., Hartford Co. 1972); and in a series of cases from Kentucky where the age of majority was lowered in 1964, *Kirchner v. Kirchner,* 465 S.W.2d 299 (Ky. 1971); *Collins v. Collins,* 418 S.W.2d 739 (Ky. 1967); *Wilcox v. Wilcox,* 406 S.W.2d 152 (Ky. 1966); [6] *see also Springstun v. Springstun,* 131 Wash. 109, 229 P. 14 (1924) (support decree directing payments "during the minority" of child, entered when age of majority was 18, held to have expired when child reached 18 despite prior passage of statute raising age of majority to 21); *Smith v. Smith,* 104 Kan. 629, 180 P. 231 (1919) (statute raising age of majority from 18 to 21 not given retroactive effect). *Contra, Parker v. Parker,* Tenn., 497 S.W.2d 572 (1973); *Phelps v. Phelps,* 85 N. M. 62, 509 P. 2d 254 (1973); *Mason v. Mason,* 84 N. M. 720, 507 P. 2d 781 (1973); *Whitt v. Whitt,* Tenn., 490 S.W.2d 159 (1973); *Shoaf v. Shoaf,* 282 N. C. 287, 192 S.E.2d 299 (1972); and *cf. Irby v. Martin,* 500 P. 2d 278 (Okla. 1972); *State v. Kiessenbeck,* 167 Ore. 25, 114 P. 2d 147 (1941) (statute raising age of majority from 18 to 21); *Rosher v. Superior Court,* 9 Cal. 2d 556, 71 P. 2d 918 (1937), *overruling Kendall v. Kendall,* 122 Cal. App. 397, 10 P. 2d 131 (1932) (statute raising age of majority from 18 to 21). *See generally* Annot., 170 A.L.R. 222 (1947). Of all of the cases cited, it appears that only in *Vicino v. Vicino, supra,* did the statute in question explicitly prohibit retroactive application by adopting a provision similar to that contained in section 51 of the Act.[7]

It is true, as the chancellor noted below, that a decree for child support may be varied or modified by the court in the

---

**6.** *Compare* these Kentucky cases *with* Young v. Young, 413 S.W.2d 887 (Ky. 1967) (where divorce decree made no mention of child support, after enactment of statute lowering age of majority from 21 to 18 court was without authority to order father to make support payments for two children over 18 years of age) *and* Blackard v. Blackard, 426 S.W.2d 471 (Ky. 1968) (no evidence that parties to a separation agreement, incorporated into a divorce judgment, intended that support payments continue after child reached 18); *see also* Reed v. Reed, 457 S.W.2d 4 (Ky. 1969), *motion to reopen judgment denied,* 484 S.W.2d 844 (Ky. 1972), *cert. denied,* 410 U. S. 931 (1973) (accord with Young v. Young, *supra*).

**7.** N. M. Stat. Ann. § 13-13-1(B) (1973 Supp.) specifically prohibits retroactive application only with respect to gifts made prior to 18 June 1971 under the Uniform Gifts to Minors Act.

exercise of its sound discretion at any time because of a change in circumstances, *Wooddy v. Wooddy,* 258 Md. 224, 228, 265 A. 2d 467, 470 (1970); *Seltzer v. Seltzer,* 251 Md. 44, 45, 246 A. 2d 264, 265 (1968), whether or not there has been an agreement between the parties, *Price v. Price,* 232 Md. 379, 383, 194 A. 2d 99, 101 (1963). *See* Code (1957, 1973 Repl. Vol., 1973 Cum. Supp.) Art. 16, § 25 (divorce a mensa et thoro); § 28 (power to modify support agreement); § 66(a) (equity has original jurisdiction in cases relating to child support). The exercise of this jurisdiction is ordinarily limited, however, to revisions of agreements or decrees which are made in the best interests of the children because of a change in circumstances, *see, e.g., Rothschild v. Strauss,* 257 Md. 396, 263 A. 2d 511 (1970), and in the usual case, is confined to a change in the amount, rather than the duration, of the support.

> *Decree reversed, case remanded for entry of decree conformable to views herein expressed; costs to be paid by appellee.*