931 A.2d 1154

**Richard Henry BORNEMANN**

v.

**Valerie BORNEMANN.**

**No. 0816, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

Sept. 12, 2007.

718

William D. Day, (on the brief), Rockville, for appellant.

David A. Titman, (on the brief), Ellicott City, for appellee.

Panel: KENNEY,* BARBERA, SHARER, JJ.

---

* Kenney, J. participated in the hearing and conference of this case while an active member of this Court; he participated in the adoption of this opinion as a retired, specially assigned member of this Court.

SHARER, J.

In this case of first impression, we are asked to review the effect of the 2002 amendment to Md.Code, art. 1, § 24, the age of majority as it relates to the child support obligation of a non-custodial parent, and particularly whether the amendment may be applied retrospectively. We shall hold that the amendment does have retrospective application.

## FACTUAL BACKGROUND

The parties to this appeal, Richard Henry Bornemann, appellant, and Valerie Bornemann, appellee, were divorced by judgment of the Circuit Court for Howard County, entered on December 10, 1990. Previously, the parties executed a property settlement agreement, which, for purposes of this litigation, called for custody of their then-minor child, Adam, to be awarded to Valerie, and required Richard to pay child support of $1,300 per month. Their agreement was incorporated by reference into the judgment of divorce. The agreement and the judgment called for appellant's child support obligation to terminate upon the first to occur of any one of the following events: the child's arrival at age 18, marriage of the child, the child becoming fully self-supporting, death of the child, or death of the obligated party. Adam, having been born on September 19, 1987, attained the age of 18 on September 19, 2005. On September 13, 2005, Valerie, through counsel, filed in the Circuit Court for Howard County a Motion to Modify Child Support, seeking continuation of child support beyond Adam's 18th birthday. The underpinning of the motion was Valerie's assertion that the amendment to Md.Code, art. 1, § 24—the age of majority—entitled her to receive support for Adam until he graduated from high school in 2006. Appellant filed a written opposition to the motion and, at the same time, moved for a downward modification of his support obligation.

The case was referred to a family law master who, following a hearing on December 20, 2005, made findings of fact and recommended that the circuit court adopt an order that would extend appellant's support obligation until Adam's graduation

from high school, or his 19th birthday, whichever should first occur. Appellant filed timely exceptions to the recommendation, which were heard in the circuit court on May 4, 2006. On May 30, 2006, the circuit court entered an order adopting the master's recommendations as to the extension of the support obligation.

Appellant has noted this appeal and assigns three errors to the circuit court. As slightly rephrased, the issues are:[1]

1. Whether the circuit court erred in applying Article 1, Section 24 of the Maryland Rules of Interpretation retroactively in violation of appellant's constitutional guarantees under the Maryland Declaration of Rights and the United States Constitution.

2. Whether the circuit court erred in finding appellee to be a proper party.

3. Whether the circuit court erred in not applying the child support guidelines.

For the reasons that follow, we shall affirm the judgment of the circuit court. Nonetheless, we shall remand to the circuit court for such further proceedings as are appropriate to bring appellant into compliance with the judgment of that court.[2]

## The Age of Majority—Obligation to Support

Maryland Code, Rules of Interpretation, as amended by the General Assembly in 2002, provides:

---

1. In his brief, appellant asserts:

 I. The Trial Court Erred in Applying Article I Section 24 of the Maryland Rules of Interpretation Retroactively in Violation of Article 24 of the Maryland Declaration of Rights, Article I Section 10 and the 14th Amendment to the United States Constitution.

 II. The Trial Court Erred in Holding that the Mother was a Proper Party When She Filed a Claim for Support for a Person Eighteen Years of Age.

 III. The Trial Court Erred in Continuing the Support Payments at the Previous Amount in the Absence of Evidence of Need and Abilities to Pay on the Part of Both Plaintiff and Defendant.

2. We have been advised by appellant's counsel, post-argument, that appellant did not pay child support for the period after Adam's 18th birthday, pending the outcome of this appeal.

## § 24. Age of majority; meaning of "adult", "of legal age", and "minor".

(a) *Age of majority.*—(1) Except as provided in paragraph (2) of this subsection or as otherwise specifically provided by statute, a person eighteen years of age or more is an adult for all purposes whatsoever . . .

(2) A person who has attained the age of 18 years and who is enrolled in secondary school has the right to receive support and maintenance from both of the person's parents until the first to occur of the following events:

(i) The person dies;

(ii) The person marries;

(iii) The person is emancipated;

(iv) The person graduates from or is not longer enrolled in secondary school; or

(v) The person attains the age of 19 years.

(b) *"Adult", "of legal age", and "minor" defined.*—(1) The terms "adult", "of full age", or "of legal age" refer to persons who have attained the age of eighteen years.

(2) Except as provided in subsection (a)(2) of this section, the term "minor", as it pertains to legal age and capacity, refers to persons who have not attained the age of eighteen years.

The amendment became effective on October 1, 2002.[3]

### 1. Retrospective Application

■ Appellant's challenge to retrospective application of the 2002 amendment to Art. 1, § 24 is two-fold. First, he asserts that retrospective application will impair his "vested right" to termination of his child support application on the day of Adam's 18th birthday. Secondly, he maintains that such application is in violation of Article 1, Section 10 of the United

---

3. Art. 1, § 24 was amended by the passage and enactment of Senate Bill 657 and its cross-filed companion, House Bill 993. Sec. 2, ch. 180, Acts of 2002. For convenience, we shall refer to the legislation as Senate Bill 657.

States Constitution, which precludes the enactment of laws impairing the obligation of contracts.

The test for retrospective application of a legislative enactment was set out by the Court of Appeals in *Allstate Ins. Co. v. Kim,* 376 Md. 276, 289, 829 A.2d 611 (2003) [4]:

> When an issue is raised regarding whether a statute may be given retroactive effect, we engage in a two-part analysis. First, we must determine whether the Legislature intended the statute to have the kind of retroactive effect that is asserted ... Applying the presumption of prospectivity, a statute will be found to operate retroactively only when the Legislature "clearly expresses an intent that the statute apply retroactively."

> \* \* \*

> If we conclude that the Legislature *did* intend for the statute to have retroactive effect, we must then examine whether such effect would contravene some Constitutional right or prohibition.

(Emphasis in original) (citations omitted).

■ There are exceptions to the general presumption that statutes are not to be applied retrospectively. *Langston v. Riffe,* 359 Md. 396, 406, 754 A.2d 389 (2000). These include legislative enactments that apply to procedural changes, or that have a remedial effect and do not impair vested rights. *Id.* at 406, 408, 754 A.2d 389. We first ascertain the Legislature's intent.

---

**4.** The Court articulated four basic principles regarding the application of statutes to events that occurred prior to their effective date:

(1) statutes are presumed to operate prospectively unless a contrary intent appears; (2) a statute governing procedure or remedy will be applied to cases pending in court when the statute becomes effective; (3) a statute will be given retroactive effect if that is the legislative intent; but (4) even if intended to apply retroactively, a statute will not be given that effect if it would impair vested rights, deny due process, or violate the prohibition against *ex post facto* laws.

*Allstate, supra,* 376 Md. at 289, 829 A.2d 611.

## Legislative Intent

To determine legislative intent, we begin by examining the plain meaning of the statutory language. *Reier v. State Dept. of Assessments and Taxation,* 397 Md. 2, 26, 915 A.2d 970 (2007). If the language in the statute is clear and unambiguous, we need not search further. *Evans v. State,* 396 Md. 256, 341, 914 A.2d 25 (2006). If the language does not clearly convey the Legislature's intent, we may look for evidence of intent from legislative history or other sources. *Id.;* see also *Allstate, supra,* 376 Md. at 290, 829 A.2d 611.

The genesis of the amendment to art. 1, § 24 of the Rules of Interpretation, is found in Senate Bill 657, introduced in the 2002 session of the General Assembly. The amendment is silent regarding its retroactive or prospective effect. Testimony found in the bill file for Senate Bill 657 is also silent on the matter. The preamble to Senate Bill 657, however, is not.

The preamble to Senate Bill 657 provides:

FOR the purpose of altering certain provisions of law defining the age of majority to provide that a person who has attained the age of 18 *years* and who is enrolled in secondary school has a right to support and maintenance until the first of certain events occur; *establishing that this Act shall be considered a material change in circumstances for purposes of modifying a child support order issued before the effective date of this Act;* and generally relating to child support.

(Emphasis added).

Preambles may be considered when determining legislative intent. *Georgia–Pacific Corp. v. Benjamin,* 394 Md. 59, 81, 904 A.2d 511 (2006)("In an attempt to determine legislative intent, it is well settled that preambles to a statute may be considered.")(citing *McAlear v. McAlear,* 298 Md. 320, 343, 469 A.2d 1256 (1984)). *But see Comptroller of the Treasury v. Glenn L. Martin Co.,* 216 Md. 235, 249, 140 A.2d 288 (1958)("Preambles are not operative parts of the statute."); *Gibson v. State,* 204 Md. 423, 432, 104 A.2d 800 (1954).

The emphasized language of the preamble appears to reference Md.Code, Fam. Law ("FL") § 12–204(a) (2006 Repl.Vol.), which provides:

**Modification of child support award.**

(a) Prerequisites.—The court may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a *material change of circumstance.*

(Emphasis added).

Enacted in 1988, the material change requirement of FL § 12–104(a) for child support modifications has long been a component of Maryland family law, and was well-ensconced when the Legislature considered Senate Bill 657. Therefore, we reasonably conclude that the Legislature intended the changes promulgated by Senate Bill 657 to work in *pari materi* with § 12–104(a). In other words, the amendments provided custodial parents the opportunity to seek modification of the existing child support orders to obtain extension of the obligation.

We also look for guidance from previous interpretations of art. 1, § 24. The effect of the 2002 amendment is a question of first impression, but does not represent the first amendment to the age of majority. Article 1, § 24 was amended in 1973, lowering the age of majority from 21 to 18 years. *See* Chapter 651 of the Laws of 1973. That amendment precipitated a similar issue—whether child support decrees entered before July 1, 1973, could be amended to shorten a support obligation. The Court of Appeals addressed the issue in *Monticello v. Monticello,* 271 Md. 168, 173–74, 315 A.2d 520 (1974), stating:

[W]e are prepared to hold that the use of phrases such as "infant" child, "minor" child, "during infancy," "during minority," "until attaining majority," or "until age of majority," in an agreement or in a decree relating to child support dated prior to 1 July 1973, must have meant support until attaining age 21, in the absence of a clear expression of contrary intent, since this is the only meaning which could reasonably have been within the contemplation of the par-

ties at the time such an agreement was executed, or in a judge's mind when such a decree was entered.

The Court of Appeals relied on language in the 1973 act which instructed that "the provisions of this Act will be construed only *prospectively* and shall not be applied or interpreted to have any effect upon or application to any event or happening occurring prior to the effective date of this Act ..." Section 52, ch. 651, Acts 1973. The Court also relied on the legislative intent:

> Such a holding is not only consonant with the provisions of section 51, which direct that the Act be applied prospectively, but is consistent with the clear expression of legislative intent found in the Legislative Council's report to the 1973 General Assembly regarding the bill which later became the Act.

*Monticello, supra,* 271 Md. at 174, 315 A.2d 520.

The report of the Legislative Council cited by the court made clear that the law was not intended to affect "decrees, trusts, deeds, and other instruments in being on the effective date of July 1, 1973." *Id.* We base our interpretation of the 2002 amendment by applying the same reasoning applied by the Court of Appeals in *Monticello.* While the Legislature made it clear that the 1973 amendment was to be applied only prospectively, the legislative intent for retrospective application of the 2002 amendment is clear, and implicates support orders in being prior to the effective date—October 1, 2002.

Having determined that the Legislature expressed a clear intent that the statute apply retrospectively, we now examine whether such application "would contravene some constitutional right or prohibition." *Allstate, supra,* 376 Md. at 289, 829 A.2d 611.

### Validity of Retrospective Application

#### Vested Rights

■ We begin our discussion of the validity of retrospective application by addressing appellant's contention that his "vested right" to termination of his child support obligation on the

day of Adam's 18th birthday has been impaired by the circuit court's retrospective application of art. 1, § 24. Appellee, in contrast, argues that appellant has no vested right at stake, asserting that "[s]ince Maryland Courts have never hesitated to modify child support agreements, such agreements can hardly be classified as an interest which is proper for a state to 'recognize and protect.' " Whether appellant has a vested right to terminate his child support obligation at Adam's 18th birthday is, therefore, a threshold matter to the issue of impairment.

Family Law § 5–203 charges that parents "are jointly and severally responsible for the child's support, care, nurture, welfare, and education." The Court of Appeals has stated that "[t]he obligation is not perfunctory, to be performed only at the voluntary pleasure or whimsical desire of the parent ...." *Middleton v. Middleton,* 329 Md. 627, 633, 620 A.2d 1363 (1993). The duty parents owe to their children did not originate in statute, however, as § 5–203(b)(1) is reflective of both traditional common law and natural law. The principle was best articulated in the language quoted by the Court of Appeals in *Brown v. Brown,* 287 Md. 273, 284, 412 A.2d 396 (1980):

> [t]he duty of parents to provide for the maintenance of their children, is a principle of natural law; an obligation laid on them not only by nature herself, but by their own proper act, in bringing them into the world ... By begetting them, therefore, they have entered into a voluntary obligation to endeavor, as far as in them lies, that the life which they have bestowed shall be supported and preserved.

(Quoting 1 W. Blackstone, *Commentaries on the Laws of England* 447 (Christian ed., Phila. 1854)).

Against this backdrop of historically recognized inherent parental duties and obligations, we take up appellant's argument that he has suffered the loss of a vested right. Appellant asserts that by applying the 2002 amendment to art. 1, § 24 retrospectively, the court imposed upon him a new legal duty (the extension of his child support obligation), thus

infringing upon his vested right to pay a lesser amount, in total.

A vested right is defined as "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." BLACK'S LAW DICTIONARY 1324 (7th ed.1999).[5] The law of Maryland is clear that the obligation to support accrues at the child's birth. When there is a vesting in the context of the support obligation is not clear. The Court of Appeals has noted in *dicta* that courts cannot order child support payments previously paid by putative fathers to be repaid when paternity is later invalidated. *Langston v. Riffe*, 359 Md. 396, 423, 754 A.2d 389 (2000). After the payments are made, the Court of Appeals stated, "[t]hose property rights are already accrued." *Id.*

This statement is in accord with the treatment of child support modifications in FL § 12–104(b), which provides that courts "may not retroactively modify a child support award prior to the date of the filing of the motion for modification." Thus, the rights of the parties as to child support orders already entered are settled. Courts may not force repayment of support, even when the obligor has been determined not to be the father. Likewise, the courts may not modify the obligation from a date earlier than the request for modification. Thus, the rights of both parents to support previously paid are vested.

The amounts of future child support, however, are not free from modification. Section 12–104(a) allows courts to modify child support awards "subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance." Therefore, appellant cannot claim a vested right to pay only a certain dollar amount in the future, either in each installment, or in total. Future support is determined by the effect of a material change in circumstances, and can

---

5. For a thorough discussion on the various definitions of "vested rights", *see Langston v. Riffe*, 359 Md. 396, 419–20, 754 A.2d 389 (2000). We believe the BLACK'S LAW DICTIONARY definition is representative of these various descriptions.

result in either an upward or downward modification. Parents enjoy no prospective guarantees of their future child support obligation. It was within this framework that the Legislature modified the age of majority. Our consideration of the language of Senate Bill 657, including the preamble (quoted *supra*), leads us to this conclusion.

Having found no Maryland case discussing the 2002 amendment, we have turned to the cases of our sister states. Arizona's family law scheme, for example, operates in much the same way as does Maryland's. *See Gore v. Gore,* 169 Ariz. 593, 821 P.2d 254 (App.1991). In *Gore,* the Court of Appeals of Arizona considered whether a father's child support obligation could be extended beyond his son's 18th birthday, until his graduation from high school. *Id.* The support extension/modification was sought pursuant to a change in Arizona law that became effective after the divorce of the parties. *Id.* at 256. Holding that the amendment could be applied to modify the existing child support order, the court explained:

> A statute is considered retroactive when it affects a vested right. Child support payments become vested upon the due date of each payment; each installment "is in the nature of a final judgment conclusively establishing the rights and duties of the parties to that installment." Thus, appellee's right to cease making child support payments on the child's 18th birthday was not a vested right until the child's 18th birthday. Accordingly, as the statute extending the duration of child support payments was enacted long before the child's 18th birthday, it does not require retroactive application.

*Id.* (citations omitted).

Other jurisdictions have reached a similar result. *See also Leathers v. Ratliff,* 925 S.W.2d 197, 199 (Ky.App.1996)("the term of the legal obligation to support a child is controlled by, and may be modified by, a court of competent jurisdiction in accordance with existing statutory authority created after entry of the decree"); *Davis v. Helton,* 796 S.W.2d 409, 412 (Mo.App.1990)(child support order was required to be modi-

fied so as to avoid conflict with new law); *Ramacciotti v. Ramacciotti*, 106 Nev. 529, 795 P.2d 988 (1990)(extension of child support obligation past 18th birthday did not result in retroactive application of statute); *Forte v. Forte*, 143 Vt. 518, 468 A.2d 561, 562 (1983)("the statute fixing the age of majority does not vest any rights. Minority status is both defined by the legislature and is subject to change by the legislature."); *Cason v. Cason*, 271 S.C. 393, 247 S.E.2d 673, 675 (1978)("The fact that the age of majority was twenty-one (21) at the time of the decree and the determination of the liability for support, does not create a vested right to have support continued to age 21 regardless of any change in the law."); *Wiker v. Wiker*, 600 P.2d 514 (Utah 1978)("no one has any vested rights in a support decree which statutorily may be changed from time to time by a court under its continuing jurisdiction in such matters.").[6]

We are persuaded by the reasoning in *Gore*. The Arizona court's analysis is consonant with the current Maryland framework of child support modification. We accept that child support payments vest on the due date of each payment. Rights concerning future child support liabilities, including the termination of support, therefore, do not vest until the due date, and are subject to the continuing jurisdiction of the courts. We believe this result to be consistent with the intent of the Legislature, as well as with the natural and historical obligations of parents to their children. Finally, it is without doubt in accord with our steadfast adherence to the overarching public policy to act in the best interest of the child.

### Impairment of Contract

 Appellant next contends that the circuit court's retroactive application of art. 1, § 24 impairs his contractual rights guaranteed by the Contracts Clause of the United

---

6. For further discussion of the effect of statutory changes in the age of majority on child support obligations, *see* 24A Am.Jur.2d Divorce and Separation § 1046 (2007).

States Constitution.[7] Article 1, § 10 of the Constitution provides, in pertinent part, that no State shall pass any law impairing the obligation of contract. To determine whether the 2002 amendment to art. 1, § 24 violates the contracts clause, we engage in a three-part inquiry: (1) whether there is a contractual relationship, (2) whether a change in law impairs that contractual relationship, and (3) whether the impairment is substantial. *Allstate, supra,* 376 Md. at 299, 829 A.2d 611.

Addressing the first prong, appellant cites *Pumphrey v. Pumphrey,* 11 Md.App. 287, 273 A.2d 637 (1971), for the proposition that property and settlement agreements are subject to the general rules of contract construction. In that respect he is, of course, correct. Paragraph 3.4 of the separation and property settlement agreement between the parties provides that appellant will provide support until Adam's 18th birthday. This paragraph is incorporated in the circuit court's Judgment of Absolute Divorce. We decline appellant's invitation to interpret this provision as a contractual obligation, bringing it under the protection of the Contracts Clause.

A settlement agreement that has been incorporated into a final judgment may be enforced either as a judgment or an independent contract. *Fultz v. Shaffer,* 111 Md.App. 278, 681 A.2d 568 (1996). However, the duty to support one's child cannot be waived by contract. *Stambaugh v. Child Support Enforcement Admin.,* 323 Md. 106, 591 A.2d 501 (1991). The obligation to support is a natural and legal obligation of parents to support their children, and exists regardless of whether or not it is referenced in a settlement agreement. In the instant case, the support obligation was fixed by court order, and the retroactive application of art. 1, § 24, did not impair a right of contract.

---

7. Article 1, Section 10 of the United States Constitution states:

No State shall enter into any Treaty, Alliance, or Confederation; grant Letters of Marque and Reprisal; coin Money; emit Bills of Credit; make any Thing but gold and silver Coin a Tender in Payment of Debts; pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts, or grant any Title of Nobility

### 2. Is Appellee a Proper Party?

■ Appellant next contends that, assuming our affirmance of the circuit court's order continuing his support obligation, Valerie is not a proper party to the proceedings, Adam having attained his majority for all purposes. Of course, having held that there is no bar to the retrospective application of the 2002 amendment, it follows that Adam remains a minor for the purposes of appellant's child support obligation.

Moreover, when Valerie filed the motion to modify on September 13, 2005, Adam had not yet attained his 18th birthday; hence, he would not have been an appropriate party.[8] Were we to determine that Adam, not his mother, is the appropriate party, we would remand for the purpose of substitution of a party. That, however, would not change the ultimate conclusion that appellant's child support obligation would be extended for several months. We decline to adopt a ruling that would elevate form over substance.[9]

In his want-of-a-proper-party argument, appellant suggests not only that Adam must be a party, but that the post-age 18 support payments should be made directly to Adam, not to his mother. We find no support for that proposition. Child support enables the custodial parent to provide the necessaries of life for a minor child—food, shelter, clothing, etc. *See Goldberger v. Goldberger*, 96 Md.App. 313, 624 A.2d 1328 (1993), cert. denied, 332 Md. 453, 632 A.2d 150 (1993). To

---

**8.** The trial court, relying on an incorrect docket entry, observed that "Adam turned 18 on the day [appellee] filed the motion for reconsideration."

**9.** Md. Rule 2–201 states, in pertinent part:

Every action shall be prosecuted in the name of the real party in interest, except that an executor, administrator, personal representative, *guardian,* bailee, trustee, of an express trust, person with whom or in whose name a contract has been made for the benefit of another, receiver, trustee of a bankrupt, assignee for the benefit of creditors, or a person authorized by statute or rule *may bring an action without joining the persons for whom the action is brought* ...
(Emphasis added).

suggest that child support should be paid directly to a child, even assuming adulthood, where his necessaries are being provided by a custodial parent, flies in the face of logic and the stated public policy of providing for minor children. Family Law § 5–203 declares that parents are "natural guardians of their minor child." The term guardian means "[o]ne who has the legal authority to care for another's person or property." BLACK'S LAW DICTIONARY 712 (7th ed.1999). Unless it can be shown that a child, during the period between his or her 18th birthday and one of the other statutory terminating conditions, is responsible for his or her own necessaries, post age 18 child support payments, required by Art. 1, § 24, must be made to the child's custodial parent or guardian, not to the child.

### 3. *Child Support Guidelines*

Finally, appellant suggests that the trial court erred by not considering the child support guidelines, including appellee's needs and appellant's ability to pay, before extending his child support obligation.

Appellee's motion for modification did not seek an increase in child support. Appellant's response contained a motion for a downward modification. More to the point, neither party offered evidence of need or ability to pay, either before the master or the circuit court.

Appellant points to Md.Code, Fam. Law § 12–202, which provides:

**Use of guidelines; modification of orders; review**

(a) Use required; presumptions; departure from guidelines—(1) Subject to the provisions of paragraph (2) of this subsection, in any proceeding to establish or modify child support, . . . the court shall use the child support guidelines set forth in this subtitle.

■■■ A court, upon a motion to modify by extension of a support order beyond a child's 18th birthday, is obliged to consider factors that are established by the child support guidelines, if either of the parties seeks a modification of the

*amount* of child support. The 2002 amendments to art. 1, § 24 are effectively a self-executing material change in circumstance. However, we do not find a requirement that the master or the circuit court, *sua sponte,* must delve into those matters. The party seeking modification bears the burden of production and the burden of persuasion.

Here, appellee did not seek an increase in the amount of child support; hence, she offered no evidence that would support an increase in the amount of support. While appellant, in his responsive pleading, requested a downward modification of the amount of child support, he did not file a Rule 9–202(f) financial statement. Nor did he request the master to hear evidence on the issue of his ability to pay, or appellee's needs for Adam. Appellant failed to carry his burden of showing a change of circumstance warranting a modification of the *amount* of child support. Therefore, the guidelines are not implicated.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED; CASE REMANDED FOR FURTHER PROCEEDINGS TO CAUSE COMPLIANCE WITH THE JUDGMENT OF THAT COURT.**

**COSTS ASSESSED TO APPELLANT.**