*Damon v. Robles*, No. 2196, September Term, 2017.  Opinion by Graeff, J.

**FAMILY LAW — CHILD SUPPORT — INCARCERATED OBLIGORS**

Md. Code § 12-401.1 of the Family Law Article changed the procedure by which an obligor could eliminate child support obligations while incarcerated.  Rather than requiring the obligor to file a motion to modify child support, the statute creates a presumption of inability to pay and automatically prevents arrearages of child support from accruing during incarceration under certain circumstances.  Because the statute is procedural and remedial, it may apply retroactively unless it impairs vested or substantive rights.

In ruling on Mr. Robles' 2017 motion to reduce arrearages he owed to reflect his incarceration, the circuit court properly determined that there was a vested right in arrears that had accrued prior to October 1, 2012, when FL § 12-104.1 was enacted, and the right to these payments could not be taken away.  The right to child support, however, is not vested until the due date of each payment.  Because FL § 12-104.1 automatically prevented Mr. Robles' payment obligations from accruing, FL § 12-104.1 applied retroactively as of October 1, 2012, and the court did not err in ruling that Mr. Robles' arrears should be adjusted accordingly.

Circuit Court for Baltimore County
03-C-05-013450

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2196

September Term, 2017

_____

RENEE DENICE DAMON

v.

EDWIN RAFAEL ROBLES

_____

Graeff,
Beachley,
Kenney, James A., III
    (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed: April 2, 2020

*Daniel A. Friedman, J., did not participate
in the Court's decision to report this opinion
pursuant to Md. Rule 8-605.1.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

Renee Denice Damon, appellant, appeals from an order issued by the Circuit Court for Baltimore County granting, in part, the motion filed by Edwin Robles, appellee, to modify his child support arrearage based on a 2012 change in the law that prevents child support arrearages from accruing when a parent is incarcerated. The court ordered the Office of Child Support Enforcement ("OCSE") to reduce the child support arrears that had accrued from October 1, 2012, the effective date of Md. Code (2012 Repl. Vol.), § 12-104.1 of the Family Law Article ("FL"), through August 2014, when Mr. Robles was released from prison.

On appeal, Ms. Damon presents one question for this Court's review, which we have rephrased slightly, as follows:

> Did the circuit court incorrectly interpret FL § 12-104.1(b) when it retroactively applied the law to past due child support arrearages?

For the reasons set forth below, we shall affirm the judgment of the circuit court, with an amendment to the amount of credit in arrears.

## FACTS AND PROCEEDINGS

Ms. Damon and Mr. Robles are the parents of a daughter ("N"), who recently turned 18 years old. The parties were never married. On March 16, 2006, Mr. Robles was ordered to pay $430 per month in child support, plus $40 per month toward arrears. Payments were to be made to the Maryland Child Support Account and forwarded to Ms. Damon.

Four years later, in March 2010, Mr. Robles was incarcerated. He remained in the custody of the Federal Bureau of Prisons until August 2014. FL § 12-104.1, which

provides that arrearages of child support may not accrue during an obligor's incarceration under certain circumstances, went into effect on October 1, 2012, 23 months before Mr. Robles' release.

On April 30, 2014, a few months prior to his release, Mr. Robles filed a motion to modify child support, alleging that his incarceration amounted to a change in circumstances. By consent order dated February 20, 2015, Mr. Robles' child support obligation was reduced to $338 per month, by wage lien through the OCSE, retroactive to April 30, 2014.

On May 19, 2017, Mr. Robles again moved to modify child support. He alleged that he had been incarcerated for 56 months, could not afford to pay his child support during that time, and his "arrears were accumulated because of [his] incarceration."

Ms. Damon filed an answer, asking the court to deny the motion. She did not dispute that Mr. Robles had been incarcerated, but she alleged that he made a decision to return to his criminal lifestyle.

On August 8, 2017, Mr. Robles, now represented by counsel, filed a first amended motion to modify child support and "Petition for Accounting." He alleged that he owed $21,693 in child support arrears as of July 2017, that most of that amount accrued during his incarceration, that he was unable to file a motion to modify during his incarceration, and, because of the arrears balance, he was unable to "obtain credit, licenses, and otherwise manage his life." He asked the court to order the OCSE to perform an accounting to determine the total amount of arrears that had accrued during the period of his incarceration and to reduce the arrearages to "reflect the [i]ncarceration."

Ms. Damon answered the amended motion and again asked the court to deny the requested relief. On October 5, 2017, a hearing was held before a family law magistrate. The magistrate granted Mr. Robles a postponement to allow OCSE to perform an audit.[1]

On November 1, 2017, the OCSE completed its audit. The audit reflected that Mr. Robles accrued $22,852 in child support arrears from March 2010 until August 2014.

On November 28, 2017, the parties appeared for a modification hearing before a judge. Mr. Robles' attorney argued that, since the enactment of FL § 12-104.1 in 2012, it had been the practice of the local child support enforcement agencies to "automatically stop" accrual of arrearages for obligors who became incarcerated. Because Mr. Robles already was incarcerated when the law took effect, however, his case "wasn't caught," and his child support arrears continued to accrue.

The court asked if the law applied "retroactively to arrearage figures that accrued before the change in the law?" Counsel replied that, although his "first position" was that the court should set aside all of Mr. Robles' arrears accrued during his incarceration, he recognized that the law may only apply prospectively, and therefore, his alternative request was that the court set aside the arrears that accrued from October 1, 2012,

---

[1] On the hearing sheet, the magistrate directed that, upon completion of an audit, the matter should not be set for a magistrate hearing because it was the understanding of the family law magistrates that the relief requested, which the magistrate characterized as a "suspension of [child support] retroactively prior to the filing," was not permitted by law.

forward.  He calculated the latter amount to be $9,890 by multiplying 23 months by $430 per month.[2]

Ms. Damon argued that the language and history of FL § 12-104.1 made clear that the statute applied only to persons who became incarcerated after October 1, 2012.  She asserted that, because Mr. Robles already was incarcerated when the law took effect, it did not apply to him.[3]

The court stated at the end of the hearing that, although Mr. Robles' motion was captioned as a motion to modify child support, it actually was a motion for an order changing the arrearages.  On December 5, 2017, the court issued an order granting, in part, and denying, in part, Mr. Robles' motion.  It noted that Mr. Robles was incarcerated from March 2010 until August 2014, and it ruled that the child support arrears that accrued while Mr. Robles was incarcerated *after* October 1, 2012, should be set aside.  Thus, the court ordered the OCSE to adjust the $23,154 arrearage figure and reduce it by the amount calculated by counsel, $9,890.

This appeal followed.

---

[2] The correct amount is $9,522 (19 months, October 2012 to April 2017, at $430 per month, plus 4 months, May to August 2014, at $338 per month).

[3] Ms. Damon did not argue below, or on appeal, that Mr. Robles' 2017 motion was barred by *res judicata* because it raised claims that could have been raised, but were not, in the 2014 Motion to Modify Child Support.  Accordingly, we will not address this issue.  *See Huffman v. Pursue, Ltd.*, 420 U.S. 592, 607 n.19 (1975) (Appellants did not plead *res judicata* in the court below, and therefore, it was not available to them on appeal.); Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court.").

**DISCUSSION**

Ms. Damon, a self-represented litigant, contends that the circuit court erroneously reduced a portion of appellee's child support arrearage for a period of time in which he was incarcerated. She asserts that there is no indication that the General Assembly intended that the law be applied retroactively. Before addressing appellant's specific claim, we will briefly discuss the law regarding the calculation of child support as it relates to an incarcerated parent.

**I.**

**Legislative Background**

To maintain eligibility for federal funding relative to paternity and child support, Title IV-D of the Social Security Act, 42 U.S.C. § 651, *et seq*. obligates States to have certain laws in effect. As pertinent here, since 1986, federal law has required states to enact:

> (9) Procedures which require that any payment or installment of support under any child support order, whether ordered through the State judicial system or through the expedited processes required by paragraph (2), is (on and after the date it is due)–
>
> (A) a judgment by operation of law, with the full force, effect, and attributes of a judgment of the State, including the ability to be enforced,
>
> (B) entitled as a judgment to full faith and credit in such State and in any other State, and
>
> *(C) not subject to retroactive modification by such State or by any other State*;
>
> except that such procedures may permit modification with respect to any period during which there is pending a petition for modification, but only from the date that notice of such petition has been given, either directly or

-5-

through the appropriate agent, to the obligee or (where the obligee is the petitioner) to the obligor.

42 U.S.C. § 666(a)(9) (emphasis added). *See Harvey v Marshall*, 389 Md. 243, 265 (2005).

In 1988, to comply with that federal law, the General Assembly enacted FL § 12-104, which provides that a court "may modify a child support award subsequent to the filing of a motion for modification and upon a showing of a material change of circumstance[,]" but it "may not retroactively modify a child support award prior to the date of the filing of the motion for modification." *See Harvey*, 389 Md. at 266–67 ("The Maryland Legislature understood clearly that significant federal funds were in jeopardy if it did not enact legislation intended to effectuate the child support mechanisms located in and defined by 42 U.S.C. § 666(a)(9)," particularly the prohibition on retroactive modification of child support orders.). The term "modify" includes a reduction, alteration, or elimination of child support arrearages. *Id.* at 268.

States have taken different approaches to modification of child support due to a parent's incarceration. For example, some states have taken the position that a parent's reduction in income caused by incarceration may constitute a change in circumstances for purposes of modification of child support. *See*, *e.g*., *Clark v. Clark*, 902 N.E.2d 813, 817 (Ind. 2009). Other states, by contrast, take the position that, because this change of circumstances was due to the parent's illegal conduct, loss of income due to incarceration does not constitute a material change in circumstances that provides grounds to modify the parent's child support obligation. *See*, *e.g., Staffon v. Staffon*, 587 S.E.2d 630, 632

(Ga. 2003). Maryland historically has taken the first position, holding that "a prisoner's incarceration may constitute a material change of circumstance if the effect on the prisoner's ability to pay child support is sufficiently reduced due to incarceration." *Wheeler v. State*, 160 Md. App. 363, 374 (2004) (quoting *Wills v. Jones*, 340 Md. 480, 483 (1995)).

In 2009, the Maryland General Assembly established a task force to, *inter alia*, analyze "hurdles to reintegration of adult and juvenile offenders into the community." *See* 2009 Md. Laws, Chs. 625 & 626. In 2011, the Task Force on Prisoner Reentry recommended that the General Assembly

> pass legislation to temporarily but automatically suspend child support obligations upon incarceration for non-custodial parents sentenced to 12 or more consecutive months of imprisonment. The obligor may not be on work release and must have insufficient finances to make child support payments. . . . Current policy allows for inmates to apply for a suspension of their child support order upon incarceration. However, the vast majority of obligors are not aware of this option and consequently wind up accruing large sums of arrearages during their sentence, arrearages that they will never be able to repay.

*Task Force on Prisoner Reentry, Final Report on Prisoner Reentry* 10 (2011).

In 2012, the General Assembly enacted FL § 12-104.1, which provides, in pertinent part, as follows:

> (b) A child support payment is not past due and arrearages may not accrue during any period when the obligor is incarcerated, and continuing for 60 days after the obligor's release from confinement, if:
>
> > (1) the obligor was sentenced to a term of imprisonment of 18 consecutive months or more;
> >
> > (2) the obligor is not on work release and has insufficient resources with which to make payment; and

(3) the obligor did not commit the crime with the intent of being incarcerated or otherwise becoming impoverished.

(c)(1) In any case in which the Administration[4] is providing child support services under Title IV, Part D of the Social Security Act, the Administration may, without the necessity of any motion being filed with the court, adjust an incarcerated obligor's payment account to reflect the suspension of the accrual of arrearages under subsection (b) of this section.

(2) Before making an adjustment under paragraph (1) of this subsection, the Administration shall send written notice of the proposed action to the obligee, including the obligee's right to object to the proposed action and an explanation of the procedures for filing an objection.

The law went into effect on October 1, 2012. *See* 2012 Md. Laws, Ch. 670 at § 2.[5]

## II.

## Analysis

According to FL § 12-104.1(b), when a child support obligor is incarcerated on a sentence of at least 18 consecutive months for a crime that was not committed with the intent to avoid paying child support, is not on work release, and is unable to afford to pay child support, his or her "child support payment is not past due and arrearages may not accrue[.]" Here, there is no dispute that Mr. Robles' sentence satisfied the duration

---

[4] FL § 10-101(b) defines "administration" as the "Child Support Enforcement Administration of the Department of Human Resources."

[5] In a bill review letter to the Governor, the Attorney General addressed whether FL § 12-104.1 potentially could run afoul of the federal prohibition on retroactive modification of child support orders. *See* Letter of Attorney General Douglas F. Gansler to Governor Martin O'Malley re: House Bill 651 (May 8, 2012). The Attorney General stated that no caselaw or definitive federal policy directives indicated that states could not enact policies that permit, under certain circumstances, "automatic relief from the accumulation of arrears." *Id*. at 3.

requirement and that he had no source of funds to pay his child support while he was incarcerated. And Ms. Damon does not suggest that Mr. Robles committed a crime with the intent to avoid paying child support.

Ms. Damon contends, however, that FL § 12-104.1 does not apply to Mr. Robles' child support obligations because he was sentenced before the law took effect. As indicated, she argues that the circuit court improperly applied FL § 12-104.1 retroactively. Mr. Robles did not file a brief in response.[6]

The question presented here involves statutory interpretation, which is a legal issue. *Harvey*, 389 Md. at 257. Accordingly, we review the issue de novo. *Id.*

"[W]hether a statute operates retrospectively, or prospectively only, ordinarily is one of legislative intent." *State v. Smith*, 443 Md. 572, 588 (2015) (quoting *Langston v. Riffe*, 359 Md. 396, 406 (2000)). In determining this intent, "[s]tatutes are presumed to operate prospectively," and therefore, "absent manifest legislative intent to the contrary," statutes generally are not given retrospective or retroactive application. *Gregg v. State*, 409 Md. 698, 714 (2009).

The Court of Appeals has stated, however, that there are "exceptions to the presumption that legislation is to be applied prospectively." *Smith*, 443 Md. at 628 (quoting *Gregg,* 409 Md. at 714). For example, "a statute effecting a change in procedure only, and not in substantive rights, ordinarily applies to all actions, whether

---

[6] Mr. Robles was represented by counsel in the circuit court, but his attorney moved to withdraw his appearance in this Court. By order dated June 27, 2018, we granted his motion.

accrued, pending, or future, unless a contrary intention is expressed." *Estate of Zimmerman v. Blatter*, 458 Md. 698, 728–29 (2018) (quoting *Langston*, 359 Md. at 406–07) (cleaned up).

Another exception to the presumption that statutes apply prospectively is "[l]egislative enactments that have remedial effect and do not impair vested rights[.]" *Smith*, 443 Md. at 628 (quoting *Gregg*, 409 Md. at 714–15). A statute is remedial if it describes "methods for enforcing, processing, administering, or determining rights, liabilities or status." *Langston*, 359 Md. at 409 (quoting 2 Norman J. Singer, *Sutherland's Statutory Construction*, § 41.09, at 399 (5th ed. 1993)). The "general rule is that statutes dealing with a remedy are to be applied to actions tried after their passage even though the right or cause of action arose prior thereto." *Rawlings v. Rawlings*, 362 Md. 535, 559 (2001) (quoting Singer, *supra*, § 60.01, at 147).

*Langston* is instructive in this analysis. That case involved pre-1995 consent paternity decrees, after which the putative father became aware of facts that cast doubt on his paternity. *Id.* at 399–403. Prior to 1995, the statute provided that a paternity declaration was "final," except "to the extent that any order or decree of an equity court is subject to the revisory power of the court[.]" *Id.* at 403 (quoting FL § 5-1038(a) (Repl. Vol. 1991)). In 1995, however, the General Assembly changed the law to permit a putative father to seek to set aside a paternity decree based upon blood or genetic testing that excluded the putative father. *See* FL § 5-1038(a)(2)(i)(2) (Repl. Vol. 1999).

The issue before the Court was whether the 1995 change in the law "applie[d] to paternity declarations issued prior to the law's effective date[.]" *Langston*, 359 Md. at

-10-

403. In assessing whether FL § 5-1038(a), as amended, had retroactive effect, i.e., to "operate on transactions which have occurred or rights and obligations which existed before passage of the act[,]" the Court addressed whether either of the two exceptions to the presumption of prospective effect existed. *Id.* at 406 (quoting Singer, *supra*, § 41.01, at 337 (footnote omitted)).

The Court determined that the amendments to FL § 5-1038(a) satisfied both exceptions, i.e., it was a "procedural change" and it was remedial in nature. *Id.* at 408, 417–18. The statute enacted a procedural change because it created "an additional procedure or type of proceeding by which a putative father could seek a revision of a prior paternity declaration." *Id*. at 408. And it was remedial in nature because it "provide[d] only for a new method of enforcement of a preexisting right," was designed to "redress existing grievances," and was "conducive to the public good." *Id*. at 409. The Court held that the legislative history of the statute showed that it was intended to apply to all paternity declarations, whether current or predating its enactment. *Id.* at 410–11.

The Court noted, however, that even a "remedial or procedural statute may not be applied retroactively if it will interfere with vested or substantive rights." *Id.* at 418. The Court explained that "[a] law is substantive if it creates rights, duties and obligations, while a remedial or procedural law simply prescribes the methods of enforcement of those rights." *Id.* at 419. It stated that a "vested right" is "an immediate right of present enjoyment or a present fixed right of future enjoyment." *Id*. at 420 (quoting Singer, *supra*, §§ 41.05, 41.06, at 369–70, 379).

-11-

The Court concluded that FL § 5-1038(a) did not interfere with any substantive or vested rights. *Id.* at 420. With respect to substantive rights, the legislation did "not grant or create any new right to putative fathers to challenge paternity declarations against them," but rather, it "provide[d] new methods or procedures a putative father can use to require a court to set aside an erroneous paternity declaration." *Id.* And the Court held that the statute did not "destroy or modify any vested right[.]" *Id.* at 421. With regard to child support, the only rights that had accrued were to support already paid and to arrears owed. *Id.* at 422–23.[7] Accordingly, the Court held that FL § 5-1038(a) "applied to all paternity cases, whenever initiated." *Id.* at 427.

Applying this analysis, we are persuaded that FL § 12-104.1 is both procedural and remedial. The statute did not create a substantive right; it merely changed the procedure by which an obligor could stop the accrual of child support obligations while incarcerated. Prior to the enactment of FL § 12-104.1, an incarcerated obligor could obtain a modification of child support based on a lack of income by filing a motion to modify child support. *See Wills*, 340 Md. at 488. The enactment of FL § 12-104.1 altered that procedure. Rather than requiring an incarcerated obligor to file a motion to modify child support, the new law created a presumption of inability to pay and automatically prevents arrearages of child support from accruing during an obligor's incarceration under certain circumstances, i.e., if the obligor was sentenced to a term of imprisonment

---

[7] The Court stated that its holding did "not necessarily affect any child support already paid or in arrears as of the date of the filing of these respective proceedings at the trial court." *Langston v. Riffe*, 359 Md. 396, 437 (2000).

exceeding 18 months, is not on work-release, does not have resources to make payments, and did not commit the crime with the intent to become incarcerated and/or impoverished. The statute merely altered the way an incarcerated obligor could eliminate child support while in prison and unable to pay. *See Graves v. State*, 215 Md. App. 339, 351–52 (2013) (Statute establishing that the failure to seek an appeal does not result in waiver of the right to file a coram nobis claim was procedural because it "removed a procedural impediment" to asserting a claim.).

The statute is also remedial. The purpose of the legislation was to remove barriers to the successful reentry of released prisoners returning to their communities. *See* Dep't of Legislative Services, *Fiscal and Policy Note*, H.B. 651 at 2 (explaining that the legislation is intended to help ex-offenders "attain[] financial stability as soon as possible after release from incarceration" by preventing incarcerated obligors from accruing "substantial child support arrearages"); *Task Force on Prisoner Reentry, Final Report on Prisoner Reentry* 9–10 (2011) (To promote prisoner reentry success and reduce "crushing debt" that reduces likelihood of ex-offenders "returning to the underground economy," the Task Force recommended that the General Assembly "pass legislation to temporarily but automatically suspend child support obligations upon incarceration."). By changing the law to automatically prevent arrearages from accruing during incarceration, as opposed to requiring a motion for modification of child support due to a lack of income, the legislation provided a remedy to incarcerated obligors who often were unaware of the right/need to file a motion to modify child support while in prison.

In short, FL § 12-104.1 may be applied retroactively unless it impairs vested or substantive rights. *See Zimmerman*, 458 Md. at 736. As the Court of Appeals explained in *Langston*, child support that already has been paid and arrears that already have accrued are vested rights. *Id.* at 423. Thus, the circuit court properly determined that there was a vested right in payments between the time of the support order and the enactment of the statute, and in arrears that had accrued before October 1, 2012, when FL § 12-104.1 was enacted, and the right to these payments could not be taken away.

The right to child support, however, is not vested until "the due date of each payment." *Bornemann v. Bornemann*, 175 Md. App. 716, 730 (2007). *Accord Massey v. Massey*, 210 A.3d 148, 154 (D.C. 2019) (award of child support is judgment that becomes vested when it becomes due). The plain language of FL § 12-104.1 automatically prevents arrears from accruing if a child support obligor otherwise meets the statutory eligibility criteria. Thus, effective October 1, 2012, Mr. Robles' payment obligations automatically ceased.[8] Accordingly, the statute, as applied, did not interfere with vested rights.

The circuit court properly found that FL § 12-104.1 applied retroactively as of October 1, 2012, and it did not err by ordering the OCSE to adjust Mr. Robles' account to

_____

[8] We note that, pursuant to COMAR 07.07.24.03, when the Administration provides services and makes an adjustment on an eligible obligor's payment account, it "shall send written notice of the proposed action to the obligee, prior to adjusting the obligor's payment account after an obligor is sentenced to at least 18 consecutive months, without filing a motion with the court." And, pursuant to COMAR 07.07.24.01, the Administration may make an adjustment to the payment record of an incarcerated obligor only "with respect to a support order issued or modified after October 1, 2012." Here, however, the adjustment was ordered by the court, not the OCSE, after a hearing.

-14-

reflect that arrears should not have accrued after that date.  Because the amount of arrears that accrued during that period was miscalculated, however, we shall order the December 5, 2017, Order amended, by interlineation, to reflect a credit for $9,522 in arrears, not $9,890.

**ORDER OF THE CIRCUIT COURT FOR BALTIMORE COUNTY TO BE AMENDED BY INTERLINEATION TO CHANGE THE AMOUNT OF ARREARS TO BE SET ASIDE FROM $9,890 TO $9,522.  ORDER OTHERWISE AFFIRMED.  COSTS TO BE PAID BY THE APPELLANT.**